658 So.2d 232 (1995)
Carol SMITH, Plaintiff-Appellee,
v.
MOREHOUSE GENERAL HOSPITAL, Defendant-Appellant.
No. 27117-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
*234 Richard A. Bailey, Bastrop, for appellant.
Travis Holley, Bastrop, for appellee.
Before MARVIN, NORRIS and WILLIAMS, JJ.
WILLIAMS, Judge.
The claimant, Carol Smith, filed this action against her former employer, Morehouse General Hospital, seeking worker's compensation benefits. After a trial on the merits, the hearing officer rendered judgment in favor of the claimant, ordering the defendant to pay supplemental earnings benefits. From that judgment, the defendant appeals. We affirm.

FACTS
Smith was employed by Morehouse General Hospital as an licensed practical nurse (LPN). On Wednesday, June 12, 1991, Smith injured her back while lifting a patient. She was off work for a few days after the accident and did not return until Sunday night, June 16, 1991. On that night, after she returned to work, she began to feel as though she was "walking on a bed of needles." The next morning, she reported the problem to Dr. Carter Cox, a physician on defendant's staff, as he made his 6:00 a.m. rounds. She also filed an employee injury report, indicating that she injured her lower back on June 12, 1991. She never returned to work after June 16, 1991.
On June 17, 1991, the claimant visited Dr. Cox at his office. She complained of the pain in her left leg and told him it was related to the June 12, 1991 accident. Dr. Cox examined the claimant and x-rayed her lower spine. He diagnosed the claimant as having a severe degenerative disc disease in her lower lumbar spine, along with arthritic changes. He opined that the disease and changes preexisted the June 12, 1991 accident. He prescribed physical therapy and instructed her to return to him on a weekly basis.
The next week, claimant returned to Dr. Cox and complained of pain and numbness in her leg. A week later, she complained of left leg pain and tingling (paresthesia). Dr. Cox ordered a myelogram and CT-scan of her lumbar spine which revealed that claimant was suffering from a condition consisting of hypertrophic arthritis involving the articular facets with a moderate degree of posterior longitudinal ligament thickening, a condition which preexisted the June 12, 1991 accident. The claimant also had soft tissue prominence overlaying the lateral aspect of her L4-L5 disc which indicated a degree of lateral disc herniation.
The claimant visited Dr. Cox again on July 11, 1991. On that occasion, she reported symptoms of pain in her neck and arm. Dr. Cox ordered an MRI scan of her neck (cervical spine) and referred her to Dr. Donald R. Smith, a neurosurgeon.
Dr. Worley, a radiologist, performed the MRI scan of claimant's cervical spine on July 15, 1991. He found that the claimant had a moderate indentation on the left side of her dura at the C4-C5 level. He found the same condition on the right side at that level, but to a lesser degree. He felt the indentation was caused by calcium deposits (osteophyte formation) and possibly a herniated disc. Dr. Worley's final diagnostic impression was *235 anterior lateral compression of the dura. Dr. Cox reviewed Dr. Worley's report and determined that the osteophyte formation preexisted the June 12, 1991 accident.
On August 5, 1991, Dr. Smith physically examined the claimant and reviewed her radiographic studies. He found only degenerative changes in claimant's lumbar spine and concluded that it was essentially normal. He also concluded that the defect in claimant's cervical spine had existed long before the June 12, 1991 accident. He opined that osteophyte formation caused the defect and may have pressed on a nerve at the C4-C5 level, producing some nerve root irritation (radicular involvement). Dr. Smith's impression was that degenerative changes had occurred at the C4-C5 level (cervical spondylosis) with no objective evidence of radicular involvement. He did not believe surgery was warranted and recommended a program of vigorous physical therapy and "work hardening."
On August 29, 1991, an MRI scan was performed on claimant's lumbar spine. Dr. Worley reviewed the MRI scan and found that claimant's L3-L4 and L4-L5 discs protruded into the left side of her intervertebral foramen and appeared to slightly elevate her nerve root sheath. Dr. Smith also reviewed the MRI scan. He concluded that the changes present were normal, considering the claimant's age and mild degenerative changes.
In September of 1991, Dr. Cox sent the claimant to a rehabilitation center for testing. In October of 1991, he sent her to the North Louisiana Rehabilitation Hospital. There, Dr. Joseph M. Smith evaluated her, and opined that she suffered from cervical spondylosis with a normal lumbar spine and obesity. He recommended two weeks of intensive physical rehabilitation.
In December of 1991, the defendant sent the claimant to Dr. Douglas C. Brown, an orthopaedic surgeon. The claimant told Dr. Brown that she was experiencing numerous types of pain. After reviewing the radiological studies, Dr. Brown opined that the claimant had a herniated disc at the C4 level, a budging disc at the L3-L4 level, a hypertrophic left L4-L5 facet and a joint anterior traction spur at L2, L3, and L4 consistent with osteoarthritis of the lumbar spine. Dr. Brown then enrolled the claimant in a work hardening program.
During January and February of 1992, the claimant participated in the work hardening program. She complained that work hardening increased her discomfort, so Dr. Brown took her out of the program. Then, based on the claimant's various complaints of pain, Dr. Brown concluded that the claimant was magnifying her symptoms. He felt that she had reached maximum medical recovery and assessed her with a 35% impairment rating. Dr. Brown felt the claimant could perform gainful employment as long as she did not lift objects heavier than fifteen pounds.
On May 25, 1992, new MRI scans of the claimant's cervical and lumbar spine were done at Glenwood Medical Center. Dr. David Lawrence read those scans and concluded that while the lumbar scan was essentially normal, the cervical scan showed that the claimant had a left paracentral disc protrusion at the C4-C5 level. Dr. Cox, Dr. Brown and Dr. Donald Smith reviewed Dr. Lawrence's reports and compared them with Dr. Worley's reports of July and August 1991. Each of the doctors concluded that claimant's condition had not changed significantly during the interim, except Dr. Smith who concluded that the claimant's cervical condition had changed dramatically.
The claimant's medical records showed that she had a history of arthritis and low back pain beginning as early as 1977. Radiological studies of her spine performed in 1984 and 1985 revealed that she had degenerative changes in the C4 through C6 range with bilateral intervertebral foramenal encroachment at the C4-C5 level that was worse on the left side. Her medical records also indicate that she suffered a prior low back injury on February 12, 1987, while she was working at the Oklahoma Osteopathic Hospital. As a result of that injury, she began experiencing frequent paresthesia in her left leg and occasional discomfort in her neck. A CT-scan of her lumbar spine revealed that she had diffuse disc budging at L4-L5 and facet hypertrophy at the L3-L4 *236 and L4-L5 levels. In December of 1987, she was diagnosed with chronic low back pain secondary to chronic lumbosacral strain/ sprain and cervical spondylosis. Her physician in Oklahoma assigned a 30% permanent partial impairment rating and restricted her from stooping, bending and lifting heavy objects.
After the Oklahoma accident, the claimant filed a worker's compensation claim against her employer. She settled that claim in July of 1988 after moving to Bastrop, Louisiana. In September of 1988, the claimant began seeking treatment from Dr. Jack Noble for her arthritis and lung disease. Shortly after that, she applied for social security disability benefits based on arthritis and had a carpal tunnel release performed on her right hand. Approximately one month after being denied social security disability benefits, she secured employment with the defendant. As stated above she worked for the defendant as an LPN from March of 1989 until shortly after the accident in question.
At trial, the parties stipulated that the claimant sustained a work-related injury on June 12, 1991, and that she received all worker's compensation benefits due through September 21, 1992. After the trial, the hearing officer found that a causal connection existed between the claimant's present disability and the work-related accident. The claimant was awarded supplemental earnings benefits from September 22, 1992, until such time as her employment and medical status justified a modification.

DISCUSSION

Causation
The defendant contends the hearing officer erred in awarding the claimant worker's compensation benefits because the claimant failed to meet her burden of proving a causal link between the June 12, 1991 accident and her present disability. In sum, defendant argues that since the claimant was in poor health before the accident and the evidence presented to prove causation was not credible, there was insufficient proof that the work-related-accident caused her disability.
An employee in a worker's compensation action has the burden of proving a causal relation between the accident and the resulting disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985). A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related-accident aggravated, accelerated, or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La. 01/14/94), 630 So.2d 689, 691. The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Peveto v. WHC Contractors, supra.
The claimant in a worker's compensation case has the burden of establishing her disability and its casual relation with the employment accident by a preponderance of the evidence. Holmes v. International Paper Co., 559 So.2d 970, 976 (La.App. 2d Cir. 1990); Walton v. Normandy Village Homes Association, Inc., supra. The burden is met when the evidence, taken as a whole, shows that, more probable than not, the employment somehow caused or contributed to the disability; but it is not necessary that the exact cause be found. Brown v. Blue Grass Liquor Co., 25,552 (La.App. 2d Cir. 02/23/94), 632 So.2d 904, 907.
Whether the claimant met her burden of proof and whether her testimony was credible are questions of fact for the trier of fact to determine. Brown v. Blue Grass Liquor Co., supra at 908. "Where there are conflicts in testimony, the factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the reviewing court may feel its own evaluations and inferences are just as reasonable." Hines v. Remington Arms Co., Inc., 94-0455 *237 (La. 12/8/94), 648 So.2d 331, 335. "[R]easonable evaluations of credibility and inferences of fact should not be disturbed even though the appellate court may feel its own evaluations and inferences are as reasonable." Killen v. Continental Ins. Co., 514 So.2d 711, 714 (La.App. 2d Cir.1987). "Bearing in mind the tenet that the worker's compensation laws are to be liberally construed ...," Peveto v. WHC Contractors, supra, reviewing courts must give great weight to factual conclusions arrived at by a trier-of-fact. Killen v. Continental Ins. Co., supra. It is well settled that a court of appeal may not set aside a trial court's factual determinations in the absence of manifest error or unless they are clearly wrong. Brown v. Blue Grass Liquor Co., supra at 908.
In the present case, although medical evidence shows that the claimant had a preexisting medical condition, she testified that prior to the June 12, 1991 accident, her back was fine and she did not have any disabling symptoms. Her testimony is supported by the fact that before the accident, she had the ability to perform LPN duties (total patient care) apparently without manifesting any disabling symptoms. She also testified that commencing on the date of the accident, her back began to hurt and produce the disabling symptoms. Several days after the accident, the symptoms appeared in her left leg. Although the first written account of symptoms manifesting themselves in her arm and neck was not made until approximately one month after the accident, she testified that the pain going down into her hand began on the first day of the accident and that the pain in her neck materialized before she began physical therapy.
The record contains expert medical testimony from Drs. Carter Cox, and Warren Long indicating that the June 12, 1991 accident either aggravated or combined with the claimant's preexisting condition to cause her present disability. They based their opinions on the acute onset of the claimant's symptoms and the fact that she did not become symptomatic until after the accident. There was conflicting testimony between Dr. Cox and Dr. Smith as to whether the claimant's back and neck condition were related. Dr. Cox testified at trial that it is possible that the claimant's lumbar spine condition, which was aggravated by the accident, further progressed to involve her cervical cord area, whereas Dr. Smith opined that the conditions in the two areas are unrelated to each other. Dr. Smith's conclusion was based on his observation that the second MRI scan of the claimant's cervical area showed conditions which were not present on the first MRI scan of that area. However, as noted earlier, Dr. Smith is the only doctor who noticed any significant differences between the two MRI scans. In any event, neither Dr. Brown nor Dr. Smith completely foreclosed the possibility that the June 12, 1991 accident aggravated the claimant's preexisting back and neck conditions.
In Herren v. State, 25,564 (La.App. 2d Cir. 02/23/94), 632 So.2d 880, 883, we stated that "[a]n abnormally susceptible worker is entitled to no less protection than a healthy worker, and it is immaterial that the diseased or weakened condition eventually might have produced the disability outside employment." Id. at 883. After a thorough review of the record in this case, we cannot say that the hearing officer was clearly wrong in concluding that the claimant met her burden of proving a causal relation between the accident and her disability. This assignment of error lacks merit.

Supplemental Earnings Benefits
In this assignment of error, the defendant contends that the hearing officer erred in awarding the claimant supplemental earnings benefits. The defendant does not contend the claimant failed to meet her initial burden of proving that she is unable to earn 90% or more of the wages she received at the time of injury; rather, it argues that it showed suitable work was available for the claimant in her geographical area.
To prevail on a claim for supplemental earnings benefits, "the injured employee must prove by a preponderance of the evidence that the work-related injury has resulted in his or her inability to earn wages equal to ninety percent or more of the wages he or she was earning at the time of the injury." Miller v. Roger Miller Sand, Inc., *238 94-1151 (La. 11/30/94), 646 So.2d 330, 335; LSA-R.S. 23:1221(3). Once the claimant meets this initial burden of proving entitlement to supplemental earnings benefits, "the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn." Miller v. Roger Miller Sand, Inc., supra at 336. The employer must prove that "the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region." Id. See also Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 02/28/94), 633 So.2d 129, 132-33.
In the present case, the defendant introduced evidence gathered by a rehabilitation firm in attempting to prove the claimant was earning less than she was able to earn. After contacting a local unemployment agency and perusing the classified section of a local newspaper, the rehabilitation firm compiled a list of jobs. The firm had the list approved by Dr. Brown and then tendered it to the claimant. The firm never made any contact with the potential employers and never determined whether those employers would hire the claimant in her disabled condition. The hearing officer found that the defendant failed to meet its burden of showing that suitable employment was available to the claimant in her geographic area. See Herren v. State, supra (defendant's failure to show that potential employers would be willing to hire disabled claimant contributed to defendant's failure to meet its burden of proving work was available for employee). Therefore, we find no evidence in the record to support defendant's argument that a job was offered or available to the claimant in her geographical region. We cannot say that the hearing officer's finding on this issue was clearly wrong.

CONCLUSION
For the foregoing reasons, the hearing officer's judgment awarding the claimant supplemental benefits is affirmed. Costs are assessed to the defendant, Morehouse General Hospital.
AFFIRMED.