| iPETERS, Judge.
This is a workers’ compensation case. The plaintiff, Joseph Paddie, was injured on November 11, 1991, while harvesting timber for J.J. Timber Company. The defendant, American Interstate Insurance Company of Georgia (American Interstate), paid workers’ compensation benefits through January 6, 1993. Paddie subsequently filed this action with the Office of Worker’s Compensation Administration seeking additional benefits. The hearing officer rendered judgment in favor of the plaintiff finding him to be totally and permanently disabled but denying his claim for penalties and attorney fees. American Interstate has appealed. Paddie has answered the appeal seeking an award of penalties and attorney fees.
I ¡¿DISCUSSION OF THE RECORD
Joseph Paddie was bom May 26,1936, and at the time of the accident, was a contract logger doing business as Joseph Paddie Logging Company, working primarily out of Sabine Parish, Louisiana. As a contract logger, Paddie would enter into contracts with timber owners to cut and haul timber to the market for a fee. At the time of his accident, his company was operating three haul tracks and he was employing two skidder operators and two saw hands. He has a fifth-grade *189 education and functions at the seventh-grade level.
The fact that Paddie received a work-related injury is not in dispute. On November 6, 1991, Paddie was at the scene of a logging operation when he was struck by a tree or large limb. As a result of the accident, Paddie sustained a comminuted fracture of his right wrist, a right displaced tibia plateau fracture, and various minor cuts and bruises. He was treated for his injuries by Dr. Edward L. Morgan, a Shreveport, Louisiana orthopedic surgeon. The tibia fracture was treated by placing the right leg in a cast, but the wrist fracture required surgery. The plaintiff was hospitalized from the date of the accident until November 9, 1991. American Interstate admitted coverage under its policy and paid all medical expenses and weekly benefits at the rate of $245.00 through January 6, 1993.
Dr. Morgan continued to follow the plaintiffs recovery progress, and on May 5, 1992, released him to return to work on a trial basis. However, even before the conditional release, Dr. Morgan had already recognized that the plaintiff had begun to develop increased post-traumatic arthritis in the right wrist. The release was not satisfactory in that Paddie was unable to drive a vehicle or perform various 18mechanical tasks associated with the logging industry, and by June 26, 1991, Dr. Morgan had concluded that the plaintiff had been released too soon. Attempts to gradually build the plaintiffs strength thereafter were not successful. On October 28, 1992, Dr. Morgan assessed the plaintiffs permanent disability to be twenty-seven percent of the body as a whole; concluded that Paddie had made honest efforts to return to work; and determined that he could not be released to return to the logging industry.
Dr. Richard H. Galloway, an expert certified rehabilitation counselor, testified that there was no employment available for an individual with Paddie’s education, experience, and physical condition. He based this opinion on his evaluation of Dr. Morgan’s testimony and an interview with the plaintiff. The plaintiff and his son, Joseph Donald Paddie, testified as to his ability to work in the industry before and after the accident.
After trial, the hearing officer concluded the plaintiff was entitled to total and permanent disability benefits, and the defendant has appealed alleging five assignments of error. American Interstate first argues that the hearing officer erred in awarding total and permanent disability. The last assignment relates to the method of calculation of benefits. The other three relate to the question of total and temporary benefits, supplemental earnings benefits, and partial and permanent disability. Because we find that the hearing officer did not err in awarding total and permanent benefits, we need consider only the first and last assignments.
ANALYSIS
An injury which produces permanent total disability is one which prevents a claimant from engaging “in any self-employment or occupation for wages, whether Ror not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience.” La.R.S. 23:1221(2)(a). A claimant’s burden of proof is to show “by clear and convincing evidence, unaided by any presumption of disability” that he “is physically unable to engage in any employment or self-employment” regardless of its particular nature. La.R.S. 23:1221(2)(e).
While acknowledging the disabling extent of the plaintiff’s injuries, the defendant argues that in November of 1992 the plaintiff returned to work in a supervisory, managerial, and contracting capacity and is therefore not totally and permanently disabled. The evidence of this ability, according to the defendant, is that Paddie still has the ability to negotiate and sign contracts, supervise the crew in the field from time to time, and handle some of the public relations with potential clients. However, as pointed out by the plaintiff, there is no “white collar management level” position in the logging industry and the plaintiffs importance to the company was his ability to physically produce as well as handle the company negotiations. Even though he might be able to perform *190 such activities on a part-time basis, the evidence reflects that he is unable to do so on a day-to-day basis. As pointed out by Dr. Galloway, the plaintiff is unable to engage in any type of substantial gainful activity.
We first note that in a workers’ compensation case, our review is subject to the manifest error or clearly wrong standard. Freeman v. Poulan/Weed, Eater, 93-1530 (La. 1/14/94); 630 So.2d 733. In this case, it is uncontradicted that the plaintiff sustained disabling injuries; that he has a twenty-seven percent permanent disability of the body as a whole; that he has tried to return to his occupation and has been Runable to do so because of his disability and pain; that he has limited educational skills; and that there is no employment available for an individual with his education, experience, and physical condition. Given these facts, we do not find that the hearing officer’s conclusion of permanent and total disability is manifestly erroneous or clearly wrong. Having found that the plaintiff is entitled to permanent and total disability compensation benefits, we turn to the last assignment of error which relates to the manner of calculation of compensation benefits. Without stating the basis for the decision, the hearing officer concluded the appropriate compensation rate is $295.00 per week.
The defendant contends this calculation was in error and that it should have been calculated pursuant to La.R.S. 23:1021(10)(d) which reads as follows:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
The plaintiff contends his wages should be determined based on the prevailing wage scale for similar work, such as driving a log truck.
Prior to the accident, the plaintiff operated his business in a very basic manner. Normally plaintiff’s company would be paid on a per-load basis and would receive a check weekly for the amount of timber harvested and delivered to the appropriate mill. Plaintiff’s wife would then calculate the company expenses for the week and deposit that amount in one banking account from which all bills were paid. The remainder would be placed in plaintiffs separate account as the company “profit.” |6The plaintiff owned most of the equipment used in the business, including two trucks, a skidder, a log loader, and a grappler.
The defendant presented the testimony of Thomas Paul Youngblood, a certified public accountant, who performed an audit on the plaintiffs business records from January 1, 1989 to October 10, 1998, and testified that plaintiffs net income for 1989 was $19,974; for 1990 was $31,133; for 1991 was $16,340; for 1992 was $14,524; and for 1993 through October 31 was $33,476. However, on cross-examination he acknowledged that most of the profit arose from the use of the equipment.
The issue of how to calculate benefits for an independent contractor was recently visited by the Fourth Circuit in Harmon v. Louisiana Ins. Guar. Ass’n, 94-2614 (La.App. 4 Cir. 4/26/95); 654 So.2d 815, 819 wherein the court reviewed the jurisprudence on the subject and reached the following conclusion:
The common thread which permeates the interpretive jurisprudence on this issue is that an injured worker’s compensation benefits, whether an actual employee or independent contractor, should be based on the wages he actually earns for his labor. We are satisfied that profits from equipment rental, entrepreneurship, and capital outlay are not to be included in the computation of average weekly wage. The law is consistent that, whether the prevailing wage method or some statutory formula is used, the net result must reflect the *191 wages earned by the worker for his labor. This is consistent with the requirement of La.R.S. 23:1021(6) that a substantial part of an independent contractor’s worktime be spent in manual labor in order to be entitled to worker’s compensation. Wages earned are the basis for compensation, not profits from capital investment.
Although La.R.S. 23:1021(10)(d) does not define “gross earnings,” that term must be equated with the fruits of one’s labor. Because the legislature has set forth a statutory formula for determining “average weekly wage,” trial courts should adhere to its provisions as much as possible, keeping in mind that the end result must reflect wages earned from labor. We do recognize, however, that in some instances this may be an impossible task since return on capital, overhead profits and rental profits may be impossible to determine. In those instances, the “prevailing wage” method should not be excluded as a viable alternative in reaching the same result.
17This circuit reached a similar result some time ago in a ease involving an injured independent logger.
When the injured party is an independent contractor, engaged in manual labor of the same kind as that done by his employees, then his profits and overhead cannot be included as a part of his “wages” in computing the weekly rate of Workmen’s Compensation Benefits which may be due him. In such a situation, the courts will determine the prevailing wage basis for work similar in character to that performed by the claimant, and will use that amount in computing the amount of compensation which may be owed.
Burgess v. Southern Casualty Ins. Co., 203 So.2d 434, 437 (La.App. 3 Cir.1967). (emphasis added).
In this case both Joseph Donald Pad-die and Dr. Galloway testified that the prevailing wage for a log cutter is $100.00 to $125.00 per day. Based on this uncontradict-ed testimony, we cannot find the hearing officer was manifestly erroneous or clearly wrong in establishing weekly benefits at the rate of $295.00.
The plaintiff has answered the appeal contending the hearing officer erred in failing to award penalties and attorney fees. We also find no merit in this assignment of error. This assignment also requires application of the principle of manifest error. Absent manifest error the hearing officer’s determination should not be disturbed. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The factfinder’s conclusion is not judged by whether it is right or wrong but rather by whether or not it is reasonable based on the record. Freeman, 630 So.2d 733. From the record in this case, the denial of attorney fees and statutory penalties does not appear to rise to the level of manifest error. There was sufficient evidence upon which the hearing officer could have determined that the employee’s right to benefits had been reasonably controverted and that the ^termination of benefits was not arbitrary and capricious. Therefore we find no error in the hearing officer’s denial of statutory penalties and attorney fees.
DISPOSITION
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.