679 So.2d 157 (1996)
Bobby L. CLARK, Plaintiff-Appellee,
v.
BOBBY L. CLARK TRUCKING and Highlands Insurance Company, Defendant-Appellant.
No. 28405-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*159 J. Allen Cooper, Jr., Jack M. Bailey, Jr., Shreveport, for Plaintiff-Appellee.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for Defendant-Appellant.
Before MARVIN, SEXTON and CARAWAY, JJ.
MARVIN, Chief Judge.
In this w.c. action, Highlands Underwriters Insurance Company ("Highlands") appeals the Hearing Officer's (WCHO's) decision awarding Bobby L. Clark, benefits, penalties, and attorney's fees.
We affirm the WCHO's award of benefits, but amend to delete the award for penalties and attorney's fees.

FACTS
On October 5, 1990, Bobby L. Clark suffered a back injury while in the course and scope of his employment with the defendant, Bobby L. Clark Trucking Company ("Clark Trucking"), which the WCHO determined was co-owned by him and his wife, Gracie Aline Clark.
A myelogram by Dr. Don Burt, an orthopedic surgeon, disclosed that Clark had a disc herniation at the L4-L5 interspace on the left. On October 17, 1990, Clark underwent back surgery. Thereafter, because of Clark's persistent pain, Dr. Burt referred Clark to Dr. Jorge Martinez who performed a second back surgery in July 1991. Dr. Martinez opined that Clark reached maximum medical improvement on February 3, 1992. Clark was released for light duty work on February 22, 1992, but continued treatment for severe back pain.
Clark Trucking's w.c. insurer, Highlands, began paying weekly benefits on October 19, 1990, based on financial information provided by Clark regarding his pre-accident wage. At the time, Highlands was under the impression that Clark Trucking had ceased operations after Clark's injuries.
Some time later, Highlands learned that Clark Trucking was continuing to produce income for Clark. Highlands requested income information from Clark Trucking to determine if any of the income was attributable to Clark as "wages" in a level sufficient to negate its responsibility to pay benefits. When the claimant failed to provide this information, Highlands suspended benefits on September 6, 1992. Highlands paid all of Clark's medical expenses.
On June 26, 1992, Clark filed his claim for benefits with WCHO, asserting that his pre-accident average weekly wage was $400. Later, in an answer filed as the owners of Clark Trucking, Mr. and Mrs. Clark attempted to "confess" the average weekly wage was $876.18 based on Mr. Clark's 1990 reported earnings for social security purposes.
Evidence adduced at the hearing showed that after Clark was injured, Mrs. Clark had to assume or hire out practically all of the job duties her husband had previously performed. She hired drivers to take over Clark's truck driving duties. She saw that maintenance on the trucks was performed. She did the scheduling for the drivers and the Clark Trucking customers for whom logs were hauled. In short, Mrs. Clark operated the business after her husband's disabling injury.
After a hearing, the WCHO awarded Clark temporary total disability benefits ("TTDs") of $282 per week from the date of the accident until he reached maximum medical improvement on February 3, 1992, with a credit for amounts already paid, together with supplemental earnings benefits ("SEBs") based on zero earnings after February 3, 1992. Clark was also awarded a penalty of $2,000, and attorney's fees of $10,000.

DISCUSSION
The factual findings of the WCHO, which are to be reviewed under the manifest error standard, will not be disturbed on appeal unless they are clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed *160 Eater, 93-1530 (La. 1/14/94), 630 So.2d 733.

Barring of Benefits Under LRS 23:1208
One threshold issue is whether Clark's claim is barred under LRS 23:1208 which provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * * *
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
Highlands claims that the Clarks made consistent misrepresentations before and after the commencement of this action to attain w.c. benefits. These claimed misrepresentations are summarized as follows:
(1) The Clarks testified at the hearing that Mrs. Clark ran the trucking business alone after the accident. However, on their original tax returns for the years 1991 and 1992, Mr. Clark was shown as the sole proprietor of, and material participant in, Clark Trucking.
(2) The Clarks continuously provided conflicting financial data to Highlands regarding Mr. Clark's pre-accident wage. At various times, his average weekly wage has been reported from $400 to $965.16.
The only witnesses at trial were the Clarks and Richard Gill, an adjuster for Highlands. The Clarks testified that Clark had not worked after the accident with the exception of two unsuccessful attempts to return to his truck driving duties. The WCHO specifically found the testimony of the Clarks credible and that the income earned by Clark Trucking after the accident was, in fact, attributable to Mrs. Clark's labor. The original tax returns were amended in 1993 to reflect this fact.
The defendant produced no evidence at trial that the arguably inaccurate calculations of the pre-accident wage were willful misrepresentations. While these calculations were varied, this can be attributed to the difficulty in estimating wages in a family business like Clark Trucking. In short, this record supports the assertion that the Clarks did not make willful misrepresentations. We find no merit.

Amount of Benefits Under LRS 23:1221
The WCHO determined that Clark was owed TTD benefits until he reached maximum medical improvement and, thereafter, SEBs based on zero earnings. Highlands asserts that the WCHO erred in determining that Clark was entitled to w.c. benefits where the trucking company continued to operate at a profit after the accident. Highlands contends that Clark was and is the sole proprietor of Clark Trucking and that he materially participated in its operation after the accident. Thus, the profits generated by the trucking company would be attributable to him as wages and would bar further TTD benefits. Highlands continues its argument by asserting that if Clark's post-accident wages equaled 90 percent or more of his pre-accident wages, he would not be entitled to SEBs.
In order to qualify for TTDs, a w.c. claimant must prove by clear and convincing evidence, unaided by any presumption, that he is physically unable to engage in any employment or self-employment, regardless of the nature of employment or self-employment, including but not limited to odd-lot employment, sheltered employment, or employment while working in pain. LRS 23:1221(1); Mitchell v. AT & T, 27,290 (La. App.2d Cir. 8/28/95), 660 So.2d 204, writ denied, 95-C-2474 (La. 12/15/95), 664 So.2d 456.
SEBs are in essence a lesser included element of TTDs. Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir. 9/23/94), 643 So.2d 352. To prevail on a claim for SEBs, an injured employee must prove by a preponderance of the evidence that the work related injury resulted in his or her inability to earn post-accident wages equal to 90 percent or more of his pre-accident *161 wages. LRS 23:1221(3). Adams v. City of Shreveport, 27,284 (La.App.2d Cir. 8/23/95), 660 So.2d 127; Smith v. Morehouse General Hospital, 27,117 (La.App.2d Cir. 6/21/95), 658 So.2d 232.
In support of its contention that Clark continued to earn wages after the accident, Highlands points to the joint tax returns of the Clarks filed for the years 1991 and 1992. On these returns, Clark is listed as the sole proprietor of Clark Trucking, and as a material participant in the business. Also, the 1991 tax return shows that, despite the fact that Clark was supposedly unable to continue driving for the company, the income of the Clarks increased $7,454 from the previous year.
Profits from a sole proprietorship should be treated the same as wages. Lafleur v. Hartford Insurance Company, 449 So.2d 725 (La.App. 3d Cir.1984). A claimant's minimal participation in the business is seen as investment income. Champagne v. Martin Mills, Inc., 607 So.2d 992 (La.App. 3d Cir.1992). Highlands emphasizes that the rule derived from these cases is that if the claimant materially participates in the business, the profits generated by that business are considered wages.
The Clarks, however, explained that Clark did not work after the accident as he had before. Mrs. Clark's testimony:
Q. Prior to October of 1990, did Mr. Clark do the vast majority of all the work in the trucking and logging company?
A. Yes, he did.
Q. He actually drove the truck?
A. Yes.
Q. Did the maintenance work on it?
A. Yes, all that he could.
Q. After October of 1990, was Mr. Clark able to do anything other than minimal services on the trucking-logging?
A. That's it.
Mr. Clark's testimony:
Q.... Prior to the time you got hurt, between you and your wife, who provided most of the services on the trucking-logging?
A. I did.
Q. And after you got injured, who provided most of the services?
A. She did.
The WCHO accepted and credited this testimony. Further, the contention that Clark continued to materially participate in the logging business after the accident is inconsistent with the medical record. It was not until February 22, 1992, over one year after the accident, that any doctor released Clark to work. Even after this date, Dr. Burt reported that Clark was still unable to work.
Accepting the testimony of the Clarks, buttressed by the medical records, the WCHO found the Clarks were co-owners of Clark Trucking and the income earned by Clark Trucking after the accident could be categorized as: 1) investment income, and 2) income attributable to Mrs. Clark's increased role in the business. Notwithstanding Mrs. Clark's efforts, the Clarks sold the company trucks, and Mrs. Clark returned to her old job working on an assembly-line. By 1992, their income had fallen to $16,500.
The WCHO noted that the tax returns for 1991 and 1992 were amended in 1993 to indicate it was Mrs. Clark who had been the material participant in the operation of Clark Trucking. This amended return was apparently filed to facilitate Clark's claim for Social Security Disability Benefits.
The WCHO specifically concluded that the testimony of the Clarks was credible. When findings are based on determinations of the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. The trier of fact, of course, is aware of the variations of demeanor and tone of voice that bear heavily on the listener's understanding and belief in what is said. Stobart v. State, DOTD, 617 So.2d 880 (La.1993).
On this record, we do not find the WCHO's award of TTDs or SEBs manifestly erroneous or clearly wrong. The income earned by Clark Trucking should not be attributed to Clark as wages because that income resulted from Mrs. Clark's increased role in the operation of the business, and, as *162 well, was a return on the investment of Mr. and Mrs. Clark in the business.
Highlands argues that the appropriate measure of Clark's average weekly wage should be the salary paid to Joe Oliver, who worked as a driver for Clark Trucking in 1991. For this year, Mr. Oliver earned wages of $15,400. Thus, his average weekly wage is $296.15. However, the record supports the conclusion that Clark did significantly more before the accident than drive a truck, being responsible for several managerial and maintenance responsibilities. This record fails to disclose the amount of work Oliver did in 1991, as compared to the amount of work done by Clark in 1990. We therefore disagree with the defendant's proposed calculation of Clark's "wage" before the accident.
Most of the pre-accident income of Clark Trucking was paid in wages to Clark. We have no records, however, that specifically show Clark's earnings or the number of days he worked in the 26 weeks prior to the injury. While this is a problem common to family owned businesses, a jurisprudential solution is provided:
In such cases, the courts have determined the average weekly wage by dividing the annual total income by the number of weeks in a year (52) to arrive at the average weekly wage. Lafleur, supra; Martin v. H.B. Zachry Company, 424 So.2d 1002 (La. 1982). In the present case, Clark earned $33,295 in 1990 on which he paid social security taxes. Clark worked for approximately 38 weeks in 1990 until his injury on October 5th. Therefore, his average weekly wage should be determined by dividing his 1990 income, $33,295, by the total time worked that year, 38 weeks, which equals $876.18.

Penalties and Attorney's Fees
Whether a w.c. provider acts reasonably and in good faith on the one hand, or arbitrarily and in bad faith on the other, in terminating a claimant's benefits is a factual issue. We review the WCHO's factual findings and inferences under the clearly wrong standard of review, not to assess whether they are right or wrong in an absolute sense, nor to determine whether this court or another trier of fact might reasonably reach a different conclusion from the same evidence, but solely to ask whether this fact finder's resolution of the conflicting evidence was reasonable, in light of the record as a whole. Freeman, supra.
Considering the inconsistent information provided by the Clarks regarding Clark's pre-accident wages, as well as the failure to provide financial information that was reasonably requested concerning the operation of Clark Trucking, we find that Highlands cannot be found arbitrary or capricious in denying benefits. The trial court was clearly wrong in this respect. The award of attorney's fees and penalties shall be deleted.

DECREE
We affirm the judgment awarding w.c. benefits in the amount of $282 per week. We amend the judgment to delete the award of penalties and attorney's fees. As amended, the judgment is affirmed. Costs of the appeal are assessed one-half to Clark and one-half to appellant.
AMENDED AND AFFIRMED.