11 HARRISON, Judge Pro Tempore.
The claimant, James Covington Sr., appeals a summary judgment holding that pursuant to a lease agreement, only 10% of the “earned revenue” from the lease constituted average weekly wage for purposes of calculating worker compensation benefits. Covington contends that all earned revenue, or at least the industry average of 25%, should be the average weekly wage. For the reasons expressed, we affirm.

Procedural background

Covington, a truck driver and loader, injured his back while working on January 9, 1999. Ace Transportation’s compensation carrier, Liberty Mutual, began paying him temporary, total disability benefits of $98 a week in March 1999. In July 2000, Covington filed this disputed claim, urging that his average weekly wage was actually $600, so he was entitled to maximum compensation benefits of $367 a week. He also sought penalties and attorney fees.
Covington was not an employee of Ace’s. He owned his truck and trailer and, at a prior time, had owned two. One year before this accident, he signed a “lease agreement” whereby he agreed to lease his truck to, and operate it for, Ace. The lease agreement ¶ 3 states, “As consideration and compensation for the use of the leased equipment, Lessee agrees to pay Owner, * * * 75% of the ‘Earned Revenue Derived by the Lessee from the Leased Equipment,’ as defined herein,” less the gross amount paid to any driver. An addendum to the lease agreement, labeled “Driver Compensation,” further states, “The owner further acknowledges and agrees | gthat the compensation to be paid by the Lessee to the said driver and constituting ‘gross driver’s wages’ within the meaning of the Lease Agreement shall be: 10% of ‘Earned Revenue Derived by the Lessee from the Leased Equipment’ as defined in the Lease Agreement.”
Both sides moved for summary judgment. Covington wanted the WCJ to declare that his average weekly wage was based on his contractual compensation, or 75% of earned revenue. Ace contended that his average weekly wage should be based on his contractual wages, or 10% of earned revenue. Both sides conceded, however, that if the lease agreement was ambiguous, then wages should be fixed at the “industry standard” of 25% of earned revenue.
In support, Ace filed Covington’s deposition in which he stated that he got a 75% commission per load, plus 10% for driver pay. Dep., 17-19. Ace also filed Covington’s tax returns for 1988, showing that Covington declared gross receipts of $48,552 and wages of $7,192.
The WCJ found the lease agreement was clear that Covington’s wages were 10% of earned revenue. She reasoned that the compensation rate of 75% was “earning based on rental property considered to be capital,” and not part of wages. She therefore rendered summary judgment in favor of Ace and Liberty Mutual, basing Covington’s benefits on 10% of earned revenue. Covington has appealed.

Discussion

By his first assignment of error Covington contends that the proper measure for calculating the wages for the owner/operator of a truck is by ^deducting expenses from gross income. In support, he cites Clark v. Bobby L. Clark Trucking, 28,405 (La.App. 2 Cir. 6/26/96), 679 So.2d 157, France v. A&M Wood Co., 566 So.2d 106 (La.App. 2 Cir.1990), and Herrin v. Georgia Cas. & Sur. Co., 414 So.2d 1323 (La.App. 2 Cir.1982). He concedes that *497 wages do not include income from investments such as equipment rental and entrepreneurship. However, he urges that profits from a sole proprietorship are wages. Lafleur v. Hartford Ins. Co., 449 So.2d 725 (La.App. 3 Cir.1984); Clark v. Bobby L. Clark Trucking, supra. He contends that he was responsible for much more than just driving the truck; bookkeeping, records, banking, repairs, tax matters and personnel were all critical parts of the business and must be counted as activities for which he earned wages. He concludes that although 75% of earned revenue is referred to as rent, he engaged in labor to earn it and thus it should count as wages.
Because Covington did not receive hourly, monthly or annual wages, his average weekly wage is based on R.S. 23:1021(10)(d):
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during the said twenty-six week period and multiplied by the average number of days worked per week[.]
Nevertheless, when the employee furnishes equipment for performing the work, and this represents a considerable portion of the service for which the employee is paid, the rental value of the equipment is deducted from the total amount paid to calculate the average weekly wage. Nesmith v. Reich ┴4Bros., 203 La. 928, 14 So.2d 767 (1943); Thompson v. Cloud, 166 So.2d 28 (La.App. 3 Cir.1964). More recent cases follow this rationale, interpreting wages to mean the amount the employee earns from his own labor, rather than profits from his enterprising or rental for any equipment he may provide. Fontenot v. Trans Gulf Inc., 95-0342 (La.App. 1 Cir. 11/9/95), 664 So.2d 1238; Zanders v. Golden Age Home Care Center, 97-0218 (La.App. 1 Cir. 12/29/97), 705 So.2d 296; 14 Malone & Johnson, La. Civil Law Treatise: Workers’ Compensation § 327 (3d ed.1994).
Fontenot v. Trans Gulf Inc., supra, is similar to the instant case. The claimant in Fontenot was a truck driver who had a “Permanent Lease Agreement” with the employer. He was thus considered an owner/operator rather than an employee. His gross receipts included payment for the rental value of his truck and the expenses incurred as well as for the value of his services as a truck driver. The court of appeal concluded that the claimant’s gross receipts for the 26 weeks prior to the accident did not constitute gross earnings. The court remanded the case to determine how much of the gross receipts were allocated to rent and expenses (which would not count toward average weekly wage) and how much to labor.
We find the rationale of Fontenot applies to this case. The summary judgment evidence shows that a major portion of Covington’s earned revenue is ascribed to the use of his truck and trailer. The return on capital is not included as gross earnings for the calculation of average weekly wage. The cases of Herrin v. Georgia Cas. & Sur. Co., France v. A & M Wood Co. and Clark v. Bobby L. Clark Trucking, supra, are distinguished in | sthat those cases did not involve lease contracts. Because there was no basis for figuring the rental value of the claimants’ equipment, this court simply deducted expenses from the claimants’ gross revenues. By contrast, the instant lease agreement clearly makes rental of Covington’s large truck and trailer a significant part of the “consideration and compensation.”
*498 Moreover, the lease agreement plainly delineates Covington’s wages as 10% of earned revenue. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024; Brown v. Drillers Inc., 93-1019 (La.1/14/94), 630 So.2d 741. A plain reading of the lease agreement shows that the parties intended for Covington’s wages to be 10% of his earned revenue. Extrinsic evidence is not needed, but Covington’s 1998 income tax returns corroborate that he treated only 10% of his earned revenue as wages. On this summary judgment evidence, there is no genuine issue of material fact and Ace is entitled to judgment as a matter of law. Covington’s first assignment of error lacks merit.
By his second assignment Coving-ton urges, in the alternative, that he is entitled to the “prevailing wage” of 25% of gross revenue. Covington stated in deposition that the “customary driver pay” was 25% of gross, and he contends that an owner/operator should be treated no worse than an employee. He also cites Harmon v. LIGA, 94-2614 (La.App. 4 Cir. 4/26/95), 654 So.2d 815, and Brown v. Vernon Sawyer Inc., 25,959 (La.┴App.6 2 Cir. 10/26/94), 645 So.2d 260, as supporting a compensation award based on the “prevailing wage” for the type of work performed by the claimant rather than by a strict application of R.S. 23:1021(10)(d).
We have closely reviewed Brown v. Vernon Sawyer Inc. and Harmon v. LIGA supra. As in the instant case, the claimant in Brown was a truck driver who leased his own truck and trailer to the defendant to haul freight. However, there is no indication that the lease spelled out what portion of rent payments would be considered wages. For lack of a better method, the district court applied the prevailing wage rate of 20%, and we affirmed. In Harmon, the claimant was a plumber who was performing work for the defendant’s insured under a verbal agreement that apparently did not designate what portion of the contract price would be considered wages. For lack of a better method, the WCJ applied a prevailing wage rate, and the Fourth Circuit affirmed. Both cases are distinguished from the instant case in that Covington’s lease agreement clearly spells out what portion of earned revenue would be considered wages. Given the positive statement of the lease agreement, we are unable to utilize the equitable remedy of the prevailing wage method. For these reasons, the second assignment lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed to the claimant, James W. Covington Sr.
AFFIRMED.