GUIDRY, J.
|2Claimant, Lashanta Malancon, appeals a judgment of the Office of Workers’ Compensation (OWC), asserting that the OWC judge erroneously calculated his pre-injury wages for purposes of determining what indemnity benefits were owed.
FACTS AND PROCEDURAL HISTORY
In July 2010, Mr. Malancon executed an “Independent Contractor Operating Agreement,” whereby he leased his 2003 Chevrolet pickup truck to Ace Transportation, LLC. The agreement required Mr. Malancon to provide Ace the use of his 2003 Chevrolet pickup truck, “along with one or more professional truck drivers and other incidental transportation-related services,” on an as needed basis. In an addendum to the agreement, Mr. Malancon designated himself as the driver to operate his leased truck. The agreement became effective on July 22,2010.
On September 3, 2010, while returning from a delivery made for Ace, Mr. Malan-con’s vehicle was hit from behind. On February 25, 2011, Mr. Malancon filed a disputed claim for compensation against Ace and ACE American Insurance Company, Ace’s insurer (collectively “Ace”), based on the accident, seeking a determination of his average weekly wage, indemnity benefits, authorization for medical treatment, penalties, and attorney fees. Prior to the hearing on Mr. Malancon’s disputed claim, the parties reached an agreement[1] wherein Ace agreed to reimburse the appropriate parties for the costs of medical treatment related to the accident received by Mr. Malancon from Dr. Rand Voohries and the Chabert Medical Center. Ace also agreed to pay $6,000 in ^penalties and $6,000 in attorney fees. Thus, at the hearing, the primary issue presented to the OWC judge to determine was Mr. Malancon’s average weekly wage. Based on that determination, the OWC judge then considered whether Mr. Malan-con was owed any additional benefits and whether Ace would be liable for the assessment of additional penalties and attorney fees for failure to pay the proper amount of indemnity benefits or whether Ace would be entitled to any reimbursement for overpayment of benefits.
At the hearing, the parties submitted Mr. Malancon’s medical records, records of his work and payment history with Ace, and a copy of the .parties’ lease contract. The only witnesses to testify at the hearing were Mr. Malancon and Richard Yan-dle, the risk manager for Ace.[2] After receiving post-trial briefs and taking the matter under consideration, the OWC judge rendered judgment finding Mr. Ma-lancon’s average weekly wage to be $282.55, entitling him to indemnity benefits in the amount of $188.46. The OWC judge then found that Ace had underpaid Mr. Malancon by $18.68 per week, so the OWC judge ordered Ace to pay Mr. Malancon $1,617.16, the difference between the amount of benefits paid and the amount owed. The OWC judge also assessed Ace with $2,000 in penalties for miscalculating *474 Mr. Malancon’s average weekly wage and corresponding indemnity benefits, as well as $10,000 in attorney fees. It is from this judgment that Mr. Malancon appeals.
DISCUSSION
A determination of Mr. Malancon’s pre-injury wages is needed to determine the amount of temporary, total indemnity benefits to which he is entitled. See La. R.S. 23:1221(l)(a). Because Mr. Malancon was not paid on han hourly, monthly, or annual basis, the method of calculating his wages must be determined in accordance with La. R.S. 23:1021(13)(d),[3] which statute provides:
Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the , average number of days worked per week.
Thus, in order to determine Mr. Malan-con’s pre-injury wages, his gross earnings from Ace must be known.
In this appeal, Mr. Malancon objects to the OWC judge’s decision to use 33-1/3 percent of the gross receipts paid him as his gross earnings rather than simply using the total amount of the gross receipts paid him, relying on Vickery v. Venture Logistics, 11-329 (La.App. 3d Cir.10/5/11), 74 So.3d 861, writ denied, 11-2378 (La.12/16/11), 76 So.3d 1207.[4] Further, Mr. Malancon argues that use of the 33-1/3 percentage as the “industry standard” is an arbitrary figure. Instead, Mr. Ma-lancon asserts that Ace had the burden of proving an actual amount of expenses to deduct from the gross receipts paid, with the resulting difference being considered his wages, and in absence of such proof, he was | sentitled to have the full sum of his gross receipts considered as his wages. We disagree.
As recognized by this court in Fontenot v. Trans Gulf, Inc., 95-0342, pp. 13-14 (La.App. 1st Cir.11/9/95), 664 So.2d 1238, 1247 (citing Nesmith v. Reich Bros., 203 La. 928, 935, 14 So.2d 767, 769 (1943)), “if the furnishing of equipment with which the work is done forms a considerable portion of the service for which the employee is paid, the rental value of the equipment should be deducted from the total amount paid in order to compute the *475 employee’s weekly wages.”[5] In Fontenot, this court held that it was error for the hearing officer in that matter to conclude that the claimant’s “gross receipts” constituted his “gross earnings” for purposes of calculating his pre-injury wages. Likewise, for the same reason, we reject Mr. Malancon’s argument that it would |fibe proper to simply use the gross receipts paid him as his gross earnings for purposes of calculating his pre-injury wages under La. R.S. 23:1021(13)(d) in this case.
This leaves us to consider whether the OWC judge erred in her determination of the amount of the gross receipts received by Mr. Malancon to attribute as his “gross earnings.”
In the absence of a designation by the parties of a specific portion or amount of the gross receipts to be considered as gross earnings, case law reveals three methods in which courts have determined the pre-injury wages of a claimant when the compensation paid the worker includes sums for the provision and use of equipment owned by the worker, as well as for the worker’s labor. See Covington v. Ace Transportation, Inc. 36,507, p. 5 (La.App. 2d Cir.10/23/02), 830 So.2d 495, 498. Courts have: (1) used the wages paid another worker doing the same or similar work on a wage basis, see Dunning v. Dapco Ventures, L.L.C., 01-2366, p. 11 (La.App. 1st Cir.11/8/02), 834 So.2d 448, 455, writ denied, 03-0215 (La.3/28/03), 840 So.2d 576 and Paddie v. American Interstate Insurance Company of Georgia, 95-293, pp. 5-7 (La.App. 3d Cir.10/4/95), 663 So.2d 187, 190-91, writ denied, 95-2679 (La.2/9/96), 667 So.2d 528; (2) deducted from the gross receipts the rental value of the equipment and related expenses incurred by the worker, see Herrin v. Georgia Casualty & Surety Company, 414 So.2d 1323, 1328 (La.App. 2d Cir.1982); or (3) used a percentage of the gross receipts typically used in the industry as the standard for determining wages, see Brown v. Vernon Sawyer, Inc., 25,959, p. 3 (La.App. 2d Cir.10/26/94), 645 So.2d 260, 264.
*476 The OWC judge in this matter used method (3), an industry standard, to calculate Mr. Malancon’s gross earnings. We observe that other than Mr. Malan-con’s vague conjectures that he incurred little or no expenses during the |7six-week period[6] that he worked for Ace, the record contains no evidence on which to calculate Mr. Malancon’s gross earnings pursuant to methods (1) or (2) listed above. Nevertheless, Mr. Malancon contends that it was improper to use an industry standard in this case because the evidence presented to establish the industry standard used was based solely on the testimony of Mr. Yandle, Ace’s risk manager. We find no error in the OWC judge’s use of Mr. Yan-dle’s testimony to establish the industry standard.
In Fontenot the evidence used to establish the industry standard consisted of the testimony of the corporate secretary and treasurer of the defendant company. According to that opinion, the secretary/treasurer testified that “she utilized one-third of the gross receipts as the ‘driver pay,’ a percentage which she obtained from her insurance agent.” The secretary/treasurer in Fontenot testified that she had collected data from truck owners who leased their trucks to the company and hired drivers to actually haul the loads, which data demonstrated that those owners paid their drivers no more than 25 percent of the gross receipts received by the truck owner. In considering that evidence, this court specifically found that the secretary/treasurer’s testimony could be used to determine the claimant’s gross earnings in that case. Fontenot, 95-0342 at p. 15, 664 So.2d at 1248.
In this case, Mr. Yandle testified that for workers like Mr. Malancon, who not only owned the equipment leased to Ace, but also operated the leased equipment (an owner-operator), the percentage used to determine the portion of the owner-operator’s gross receipts to attribute as pay solely for his labor, and not for the rental of his truck or expenses associated with use and rental of the equipment, is 33-1/3 percent. Mr. Yandle acknowledged that for twenty years, |she has been personally familiar with the customary amount that Ace and its predecessor companies usually allocated for driver wages of the gross receipts paid. He further stated that the customary amount that is allocated within Ace’s industry is “one-third of the gross commissions ... that would be paid to the truck owner.” Mr. Yandle explained that he knew this to be the standard percentage used in the industry to calculate the portion of gross receipts to attribute as wages through his general experience with the oilfield trucking industry and his association with the Louisiana Motor Transport Association, which is comprised of oilfield transportation companies like Ace. He further explained that he had been advised by the workers’ compensation insurer for Ace that workers’ compensation insurance companies use the one-third figure to determine what constitutes a worker’s wage when there is no W-2 wage that can be used to calculate the premium for the worker.
Considering this testimony, we can find no reason for holding that the OWC judge’s acceptance of Mr. Yandle’s testimony for establishing the industry standard is error. While Mr. Malancon objects to the OWC judge’s reliance on Mr. Yandle’s testimony as evidence of the industry standard for the prevailing wage rate, there was no countervailing evidence *477 presented nor do we find any legal basis to discredit Mr. Yandle’s testimony as evidence of the applicable industry standard. As such, we cannot say that the OWC judge erred in using the industry standard, as testified to by Mr. Yandle, to determine Mr. Malancon’s pre-injury wages and his related indemnity benefits.[7] Accordingly, as we1 have found no error in the OWC judge’s ruling in this matter, we reject Mr. |9MaIancon’s request for an award of additional attorney fees for work performed in perfecting this appeal.
CONCLUSION
Therefore, considering the record before us and the applicable law, we affirm the judgment of the Office of Workers’ Compensation. All costs of this appeal are assessed to Lashanta Malancon.
AFFIRMED.

. The record contains an unsigned copy of a consent judgment that memorialized the agreement of the parties. At the hearing, it was indicated that a copy of the judgment was sent for filing, but never made it into the record. The unsigned consent judgment was entered into evidence as a joint exhibit by the parties.

. At the time of the hearing, Ace had become United Vision Logistics. Mr. Yandle indicated that he had been employed with the company, in its various incarnations, for 25 years.

. By 2013 La. Acts, No. 337, § 1, the Louisiana Legislature amended La. R.S. 23:1021 to add paragraph 13, which, according to the text of Act 337, should have provided a definition of the term "payor.” However, pursuant to the statutory revision authority of the Louisiana State Law Institute, paragraphs 12 and 13 were redesignated to appear in alphabetical order, so that the definition of "payor” appears in paragraph 12, and the text of the former paragraph 12, defining "wages,” was moved to the newly added paragraph 13. See Historical and Statutory Notes for La. R.S. 23:1021.

. Specifically, Mr. Malancon points out the third circuit’s observation that La. R.S. 23:1021(12)(d) (currently La. R.S. 23:102I(13)(d)) "provides nothing about applying an industry standard” in situations where a truck lease is silent as to the specific percentage of gross receipts that will be designated as wages. Vickery, 11-329 at p. 4, 74 So.3d at 863.

. Likewise, in Malone & Johnson, Workers’ Compensation, § 327 in 14 Louisiana Civil Law Treatise 116 and 120 (2010)(footnotes omitted), it is noted:
The term "wages” means the amount earned by the employee through his own labor, rather than profits for his enterprising or rental for any equipment he may provide. Where an employee furnishes his own truck or other piece of equipment or provides his own helpers, an adjustment is ordinarily made in arriving at his wage so as to exclude those sums paid by the employer in remuneration for these items. Care must be exercised to be sure that the allocation of a part of the wage as a supposed reimbursement for use of equipment is not a ruse to make it appear that the wage is actually less than it really is.
[[Image here]]
The amendments [to the statute defining "wages," now contained in La. R.S. 23:1021(13),]continue to refer only to employees, even though the fact that some independent contractors are entitled to compensation is now well known; if a specific provision for computation of their "wage” had been desired it could have been made. There remains the problem that if the "gross earnings” of the independent contractor are used, the average weekly wage figure is likely to be substantially inflated beyond the normal return on his manual labor. Accordingly, it is probably more equitable to determine what a person genuinely an employee would earn doing the same manual labor which brought the contractor under the [Workers’ Compensation] Act in the first place. This will quite satisfactorily carry out the intention of coverage of certain independent contractors: to prevent employers from avoiding compensation by classifying persons who are engaged in a substantial amount of manual labor as "contractors”. There is no reason to extend that intention to figure into the "wage” of such persons amounts which are not wages at all, but return on capital or profit from an enterprise.

. The parties stipulated, however, that Mr. Malancon had worked 13 days for Ace over the period of five weeks prior to the accident for the purposes of calculating his pre-injury wages under La. R.S. 23:1021(13)(d).

. The gross receipts paid to Mr. Malancon by Ace were $4,242.56, one-third of which equals $1,412.77. Thus, applying the formula provided in La. R.S. 23:102l(13)(d) for an employee who has worked for an employer less than 26 weeks (the gross earnings of $1,412.77 divided by the 13 days actually worked and multiplied by the average number of days worked per week of 2.6 (calculated using the parties’ stipulation that Mr. Malan-con worked five weeks prior to accident)) results in the average weekly wage computed by the OWC judge of $282.55.