711 So.2d 843 (1998)
Joe Ann JOHNSON, Plaintiff-Appellant,
v.
BASIC INDUSTRIES, INC., Defendant-Appellee.
No. 97-1136.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1998.
*844 Nicholas Pizzolatto, Jr., Lake Charles, for Joe Ann Johnson.
Nicholas Canaday, III, Baton Rouge, for Basic Industries.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
Joe Ann Johnson appeals a judgment ordering forfeiture of her workers' compensation benefits based upon a finding that she willfully misrepresented her mileage reimbursement claims. For the following reasons, we affirm.

Discussion of the Record
Johnson injured her right knee and ankle on March 2, 1994, when she fell on a scaffold while working for Basic Industries, Inc. She filed a disputed claim for compensation on June 29, 1995, after Basic's insurer, The Insurance Company of the State of Pennsylvania (ICSP), reduced her temporary total disability benefits to supplemental earnings benefits.
In October of 1996, Johnson, Basic, and ICSP recited in open court the terms of a compromise of Johnson's claim for past benefits, including a stipulation that defendants would pay Johnson's travel expenses upon documentation. Before this compromise was reduced to judgment, however, the workers' compensation judge granted Johnson's request to withdraw from it. The case was again placed on the trial docket. On May 9, 1997, Basic and ICSP filed a motion to disqualify Johnson from future benefits pursuant to La.R.S. 23:1208, alleging that she "grossly and intentionally" misrepresented her claims for mileage reimbursement.
After her injury in 1994, Johnson received medical treatment from numerous health care providers within the city limits of Lake Charles, Louisiana, including Dr. Lynn Foret, Dr. Melvin Morris, St. Patrick's Hospital, Lake Charles Physical Therapy, Advanced Rehab Services, Inc., Thrifty-Way Pharmacy, and Walgreen's Drugstore. On her mileage reimbursement forms, Johnson represented that her address was 208 Libby Street in Lake Charles. To document the mileage for each trip, Johnson either listed the number of miles purportedly traveled from the Libby Street address to each health care provider or she recorded beginning and ending odometer readings.
ICSP paid Johnson four mileage checks totaling $594.48 for 2,477 miles traveled between September of 1994 and November of 1995. On March 25, 1997, Johnson's attorney submitted a request for payment of $744.84, representing an additional 2,806 miles claimed plus a $71.40 shortage from the previous checks. At that time, ICSP became suspicious of Johnson's mileage claims and hired an investigator, James Kenneth Faul, to verify them.
At trial on the motion to disqualify, Faul testified that he was hired to determine the actual mileage from the Libby Street address to six of the health care providers, without knowing the purpose of his assignment. Faul's figures differed greatly from those submitted by Johnson. For example, on some of her claim forms, Johnson represented that a round trip from Libby Street to Dr. Foret's office ranged from 20 to 24 miles, whereas Faul measured that distance at 7.8 miles. Johnson claimed that a round trip to Dr. Morris' office (from Libby Street) was 10 miles, but Faul measured a round trip of only.8 of a mile. From Libby Street to Thrifty-Way Pharmacy, Johnson claimed a 25 mile round trip, but Faul measured only 3.2 miles.
*845 Confronted with these discrepancies, Johnson at first denied that she lived at 208 Libby Street. She explained that she received her mail at this address, which was her mother's home; therefore, she used it on the mileage forms to avoid confusion. She claimed to have lived at several other Lake Charles residences during the period of her treatment, including 3034 General Marshall Street and 2824 Foret Drive, but she no longer remembered from which of these addresses she traveled to her health care providers.
Johnson admitted that the mileage on all forms indicating travel from Libby Street was incorrect, but she testified that she did not understand that the form required the exact address from where travel began. She further testified that the mileage she claimed was, in fact, less than what was traveled because she failed to report multiple trips to her doctors' offices and to pharmacies when the insurance company refused to authorize medication or treatment. She also believed that the mileage her friends traveled from their homes to pick her up was compensable.
At the close of the evidence, the workers' compensation judge granted defendants' motion to disqualify, finding that Johnson made willful misrepresentations on the claim forms and in her testimony at trial. The workers' compensation judge stated as follows:
Some of the reasons that I make this finding is that, Ms. Johnson, I find your testimony to have been extremely evasive on your place of residence. You were only able to recall where you resided at a particular point in time when it was, in fact, possibly to your advantage to do so. You testified that you did not understand the forms and, therefore, used your mailing address ... but, in fact, Ms. Johnson, in my dealings with you in this proceeding I've, in fact, found you to be a very bright, not at all unintelligent, person and I find it extremely difficult to believe that you truly did not understand what you were, in fact, filling out.

The odometer readings, almost every one would have had to be from a different vehicle. Very few match up in a logical sequence and, again, I find it inconceivable that a different vehicle would have been used for each different odometer reading.

Further, while you've testified that there were variables involved, as in different people picking you up from different places, that often times other stops were necessary ... and that sometimes you had to make several trips on a particular day, with all those variables the actual miles requested only varied within a two mile range. So, again, I just do not find the testimony credible and can only find that it was a willful intent to misstate the mileage and, obviously, the mileage was misstated to some significant fashion and that it was a willful intent to obtain additional mileage benefits under the Workers' Compensation Act.

(Emphasis added.)
On appeal, Johnson argues that (1) the workers' compensation judge erred in finding she willfully misrepresented her mileage; (2) mileage expenses are not "benefits" that would trigger the forfeiture provisions of La.R.S. 23:1208; and (3) the workers' compensation judge did not have jurisdiction to decide the forfeiture claim.

Opinion
La.R.S. 23:1208 provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

....
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
(Emphasis added.)
In Menard v. Mama's Fried Chicken, 97-488, p. 2 (La.App. 3 Cir.3/6/98); 709 So.2d 303, 304, this court recently explained:
The requirements for a successful claim under the statute resulting in an absolute bar to compensation benefits are (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any *846 benefit or payment. Resweber v. Haroil Constr. Co., 94-2708, (La.9/5/95), 660 So.2d 7. Benefits are not terminated under the section for false statements that are inadvertent or inconsequential, but only [for] false statement[s] which are determined by the workers' compensation judge, as authorized by La.R.S. 23:1208 to be willfully made for the purpose of obtaining benefits. Id.

(Emphasis added.)
In Chenault v. Storehouse Furniture, 97-1242 (La.App. 4 Cir.1/28/98); 706 So.2d 1060, the fourth circuit reversed a forfeiture of benefits, finding that the employer failed to prove the claimant willfully misrepresented the number of miles he traveled to obtain medical treatment. The employer argued that the claimant overstated the mileage between his home in Fort Worth, Texas and his doctors' offices in New Orleans and Metairie, Louisiana. However, the employer offered into evidence only estimates of the distance between the cities (without identifying any reference points), rather than the actual mileage from the claimant's home to his doctors' offices. The court found this insufficient to prove that the claimant misrepresented his mileage, considering the expanse of the Dallas-Fort Worth area and the distance from the western boundary of Metairie and the eastern boundary of New Orleans.
The court in Chenault then questioned whether the alleged misrepresentation, which it considered "at most" an attempt to obtain an unentitled reimbursement, would justify forfeiture because such a misrepresentation "does not purport to further his claim for disability benefits...." Id. at p. 9; 706 So.2d at 1062. Relying on Carver v. U.S. Copy, Inc., 96-611 (La.App. 5 Cir. 3/25/97); 694 So.2d 423, writ denied, 97-1507 (La.9/26/97); 701 So.2d 986, the court suggested that misrepresentations about mileage expenses should not disqualify a claimant from receiving disability benefits.
Although we concur that the employer in Chenault failed to prove a willful misrepresentation, we respectfully disagree with the dicta in that case suggesting that a claimant who willfully inflates his mileage expenses should not be disqualified from receiving disability benefits. Under La.R.S. 23:1208(A) and (E), a willfully false statement or representation made for the purpose of obtaining or defeating "any benefit or payment under the provisions of this Chapter" can result in the forfeiture of "any right to compensation benefits under this Chapter." Clearly, the mileage expenses mandated by La.R.S. 23:1203(C) are "payment[s]" as provided in § 1208(A). The alleged misrepresentations in the instant case and in Chenault may have been immaterial to the case for disability benefits, but they were directly related to another "payment" under the workers' compensation statute and, therefore, can result in forfeiture under § 1208(E). As the supreme court said in Resweber v. Haroil Construction Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, 12, "[t]he history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent."
In the instant case, Basic and ICSP presented convincing evidence that Johnson submitted inaccurate mileage reimbursement forms. Although Johnson offered several explanations for the discrepancies on the forms, the workers' compensation judge determined that Johnson willfully misrepresented the distances traveled for the purpose of obtaining additional mileage reimbursements to which she was not entitled. This determination is governed by a manifest error review. See McKarry v. Shoney's, 97-144 (La.App. 5 Cir. 7/29/97); 698 So.2d 446; Clark v. Bobby L. Clark Trucking, 28,405 (La.App. 2 Cir. 6/26/96); 679 So.2d 157. Under this standard, "the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Stobart v. State, Through Dep't of Transp. & Dev., 617 So.2d 880, 882 (La.1993).
Upon review of the record, we find no error in the determination that defendants proved the three requirements for forfeiture. First, we find that defendants submitted sufficient proof of a false statement, i.e., that Johnson's reimbursement forms contained inflated statements of mileage. Johnson reported *847 that almost every round trip to a doctor, a pharmacy, or a physical therapist was in excess of 20 miles. Faul's testimony, however, established that the distance between Johnson's reported address on Libby Street and at least six of these providers ranged from only .4 of a mile to 4.3 miles. Although Johnson testified that, at times, she may have lived elsewhere, she also stated that her other residences were within the City of Lake Charles.
Next, we find that the record supports the workers' compensation judge's characterization of Johnson's testimony as evasive and incredible. Johnson first denied that she lived at 208 Libby Street, testifying that her physical residence was on General Marshall Street. However, she later said that "currently, I'm residing at 208 Libby Street." Johnson's explanation for how she determined the mileage for each trip is also inconsistent. She first said that she began counting the miles from where she was picked up, either on General Marshall or Foret Streets, but she later testified that she included the additional mileage that others traveled to pick her up. The workers' compensation judge also found it inconceivable that Johnson did not understand the mileage forms, considering that she found Johnson to be "a very bright, not at all unintelligent, person." We note that Johnson had previously appeared before and corresponded with the same workers' compensation judge, and the record contains several letters in which Johnson successfully argued for a continuance and to withdraw from the compromise. Deferring to the workers' compensation judge's credibility determinations, we find the evidence sufficient to support the remaining requirements for forfeiture, i.e., that Johnson submitted the inaccurate mileage reports willfully and for the purpose of obtaining mileage payments.
We further distinguish this case from others in which the court refused to order forfeiture of benefits. See for example, Sumner v. Lake Charles Marine, 96-280, p. 3 (La.App. 3 Cir. 6/5/96); 676 So.2d 653, 655, writ denied, 96-1772 (La.10/11/96); 680 So.2d 645 (claimant, who had been demoted for his "mental inadequacy," did not willfully fail to report previous injuries) and Clark, 28,405 at pp. 3-4; 679 So.2d at 160 (inaccurate information claimant submitted about his wages was attributable to "the difficulty in estimating wages in a family business" rather than willful misrepresentation). Accordingly, we find no merit in Johnson's first two assignments of error.
In her final assignment of error, Johnson relies upon Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, writ denied, 97-1582 (La.10/17/97); 701 So.2d 1330, to argue that the Office of Workers' Compensation lacked subject matter jurisdiction to decide defendants' claim for forfeiture of benefits. Although Grant contains language supporting Johnson's argument, we note (1) that language can be considered dicta, as the court found the claimant did not make a willful misrepresentation and (2) another panel of this court has refused to follow that case. In Menard, 97-488 at p. 4; 709 So.2d at 305, we stated: "We feel a determination of a 1208 claim fits squarely within the scope of the agency's grant of jurisdiction as the receipt of benefits by the employee hinges on the workers' compensation judge's decision." We agree with the analysis in Menard and, therefore, find no merit in this assignment.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is affirmed at appellant's cost.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, Judge, dissenting in part.
I agree with the majority that the Workers' Compensation Judge did not err in finding that the claimant was guilty of making willful misrepresentations. However, for the reasons I previously expressed in Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, I do not feel that the Workers' Compensation *848 Judge has jurisdiction to determine an issue which is "tortious/delictual in nature."
Accordingly, I respectfully dissent.