715 So.2d 142 (1998)
Geraldine BASS, Plaintiff-Appellee,
v.
ALLEN CANNERY COMPANY, INC., Defendant-Appellant.
No. 30635-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1998.
*143 William H. Parker, Lafayette, for Defendant-Appellant.
Evelyn D. Kelly, for Plaintiff-Appellee.
Before HIGHTOWER, STEWART and GASKINS, JJ.
GASKINS, Judge.
The defendant, Allen Canning Company,[1] appeals from a ruling by a workers' compensation hearing officer finding that the plaintiff, Geraldine Bass, suffered a work related injury at the company and that she is entitled to workers' compensation benefits, medical benefits, penalties and attorney fees. For the following reasons, we reverse and vacate the decision of the workers' compensation hearing officer and find that the plaintiff has forfeited her claim for workers' compensation benefits.

FACTS
On October 11, 1995, the plaintiff went to Allen Canning Company, filled out an application for employment, was shown a training tape and was put to work that same evening on the 5:00 p.m. to 1:00 a.m. shift. The plaintiff's job was to work on a production line removing bad spots from sweet potatoes as they passed by on a conveyor belt. The plaintiff contends that the floor was very wet and had a lot of sweet potatoes on it, making it very slippery. She claims that as she reached for a sweet potato on the conveyor belt, she lost her balance on the wet floor and fell backward against a stand which was behind her. The plaintiff maintained that she injuring her lower back. She asserted that her clothing was wet from the floor and that she was hurt so badly that she could not get up.
According to the plaintiff, her supervisor, Ruby Layton, and another worker, Marion Hill, helped her to get up and she was escorted to an area where she sat down for a few minutes. She was then moved to another line and completed her shift. The plaintiff contends that she asked to fill out an accident form and stated that she needed medical attention, but her requests were denied by Ms. Layton.
The plaintiff sought treatment for her back and was still seeing a chiropractor, Dr. W.J. Luttig, at the time of the hearing. The plaintiff filed a claim for workers' compensation benefits, asserting that she was injured in a work-related accident and that she was entitled to workers' compensation benefits, medical expenses and penalties and attorney *144 fees. An accident report was eventually completed by the defendant which reflects that the plaintiff stated that she became dizzy looking at the conveyor belt and that caused her to fall.
The matter was heard by a hearing officer on April 25, 1997. Several persons were called to testify who were working at Allen Canning at the time of this alleged occurrence. Colleen Rice Humes testified that she was working on another line close to the plaintiff and did not see her fall, but did see her getting up. She stated there was no indication that the plaintiff was injured. Ms. Humes testified that the floor in the plant is wet and has a lot of potatoes on it and that she has slipped on the floor before, but she has never fallen.
Edna McGee testified that she was working on the line behind the plaintiff and had a clear view of her. She stated that she saw the plaintiff fall backward and saw Ruby Layton and another employee assist the plaintiff in getting up. She stated that she has seen water and potatoes on the floor in the plant. Ms. McGee also testified that she is no longer working at the plant.
Donna Sullivan testified that she performed seasonal work at Allen Canning and was working on a line close to the plaintiff on the day she alleges she was injured. Ms. Sullivan stated that she heard a loud noise and looked around to see what it was. She stated that the plaintiff also looked around and then she did an "Indian squat" to the floor. According to Ms. Sullivan, the plaintiff did not fall, rather she slowly squatted down. Ms. Sullivan also stated that the plaintiff did not strike a rail behind her. Ms. Sullivan claimed there was no water on the floor where the plaintiff was. She further testified that she had never slipped or lost her balance on a wet floor at the plant.
Marion Hill, a maintenance worker who helped the plaintiff get up, stated that he was working in the vicinity at the time plaintiff claims she fell and that he was watching her at the time. He claims that she just went down to a sitting position and said that she got dizzy. He testified that she did not bump into anything behind her when she went down.
Ruby Layton, the night supervisor at the plant, testified that she was also close to the plaintiff at the time she alleges she was injured. She stated that the plaintiff told her that she was dizzy. According to Ms. Layton, the plaintiff just slowly sat down and while she may have come into contact with some of the other workers' legs, the plaintiff did not strike a rail or stand behind her when she went down. Ms. Layton testified that the plaintiff said she was all right and did not ask to fill out an accident report nor did she ask to see a doctor. Ms. Layton stated that there was enough water on the floor for it to be damp, but it was not really wet. However, she observed that the plaintiff had a wet spot in her hip.
Dr. W.J. Luttig, the chiropractor who treated the plaintiff following her alleged injury, gave a deposition in this case. He stated that he first saw the plaintiff on November 28, 1995. She related to him that she fell at the defendant's plant on October 11, 1995 and had been treated by Dr. Fred L. Reed, Jr. in Lake Providence. Dr. Reed diagnosed the plaintiff with a sprained back and prescribed physical therapy. The plaintiff told Dr. Luttig that when she fell at the defendant's plant, that she sat down for five to ten minutes and that she had a sharp burning pain in her lower back on the right side and in her legs. She complained of severe low back pain across the belt line, severe pain in between and across the top of her shoulders and that she had migraine headaches about once a week which last about four days. According to Dr. Luttig, the plaintiff's x-rays showed a reverse lordotic curve and a rotational malposition of the C-2 and C-6 vertebrae with a malposition present at C-7 and T-1. He found that the plaintiff had lateral scoliosis with rotational malposition of L-3, but did not say that the fall caused the scoliosis. Dr. Luttig found that the plaintiff had indentations in the vertebrae which are indicative of trauma, but he could not say when the trauma occurred.
Dr. Luttig repeated the plaintiff's x-rays on December 20, 1995 and found that because of the continued problems at the C-2 *145 level and her continued headaches, she required further treatment.
The plaintiff gave a deposition prior to trial in which she was asked if she had ever had low back or shoulder pain, whether she had ever been hospitalized prior to this accident and whether she had ever had an x-ray of her neck or back prior to this occurrence. She was also asked if she had ever had an automobile accident. She responded negatively in all instances. Prior to trial, the defendant subpoenaed her hospital records and determined that she had suffered a broken neck in an automobile accident in 1977 and had experienced neck and back problems along with dizziness and occasional numbness in some of her extremities ever since that time. The plaintiff also experienced frequent migraine headaches. When defendant's counsel sought to impeach her at the hearing with her responses at the deposition, the plaintiff claimed that she did not understand the questions.
The hearing officer found in favor of the plaintiff, awarding her workers' compensation benefits, medical benefits, penalties and attorney fees. In written reasons for judgment, the hearing officer found the testimony of the plaintiff, Edna McGee and Colleen Rice Humes to be credible and discounted the testimony of the other witnesses, finding their testimony to be conflicting and finding that they were biased in favor of the defendant. The hearing officer found that the floor was wet at all times and that the claimant sustained an injury during the course and scope of her employment when she fell in the plant. This conclusion was largely based upon Dr. Luttig's opinion concluding that the plaintiff's back, neck and migraine problems were caused by the alleged accident because she had not experienced these symptoms previously.
The hearing officer found that the defendant presented no evidence to rebut Dr. Luttig's findings of causation and resulting disability. The hearing officer stated that the plaintiff had a preexisting condition, but found that her condition did not manifest itself until after the accident at the canning company.
The hearing officer rejected the defendant's argument that the plaintiff's claim should be rejected under La. R.S. 23:1208 due to her false statements made in her deposition. The hearing officer found no willful or deliberate attempt to deceive the defendant or the court stating, "It is clearly evident that claimant was confused by the questions asked by defendant's counsel during her deposition and certainly during the trial of this matter."
The hearing officer determined the plaintiff was entitled to workers' compensation benefits in the amount of $113.32 per week from October 11, 1995 until released to return to work by Dr. Luttig. The hearing officer also ruled that the plaintiff was entitled to medical expenses, pharmacy expenses and mileage as a result of this accident. The hearing officer found that the defendant was arbitrary and capricious in denying benefits to the plaintiff and awarded her $2,000.00 in penalties and $5,000.00 in attorney fees. Judgment incorporating the reasons for judgment was signed June 16, 1997.
Allen Canning Company appealed suspensively. The defendant contends that the trial court erred in finding that the plaintiff carried her burden of proving that she suffered a work-related accident and that she suffered a compensable injury as a result. The defendant also argues that the trial court erred in failing to recognize that the plaintiff willfully misrepresented her prior medical condition in the deposition given the defendant prior to trial. According to the defendant, under La. R.S. 23:1208, the plaintiff should be required to forfeit any claim to benefits she has as a result of her willful misrepresentation. The defendant also argues that this was a genuinely disputed issue and the hearing officer was manifestly erroneous in ordering Allen Canning to pay the plaintiff penalties and attorney fees.

FORFEITURE OF BENEFITS
The defendant contends that the workers' compensation hearing officer erred in awarding benefits to the plaintiff. Allen Canning complains that the plaintiff violated La. R.S. 23:1208 in willfully making false statements in her deposition in order to obtain *146 benefits and therefore, she forfeited her rights to those benefits. We find that this argument has merit and accordingly, we reverse and vacate the hearing officer's award of benefits, medical expenses, pharmacy expenses, mileage, penalties and attorney fees to the plaintiff. Because we find that the plaintiff has forfeited her right to workers' compensation benefits, we do not reach discussion of the other issues raised by the defendant.

Legal Principles
In a workers' compensation case, as in other civil cases, the appellate court's review of the facts is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. An appellate court may not overturn a judgment of a trial court (or a hearing officer) absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). Before an appellate court may reverse a fact finder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987).
Where findings of fact are based upon a credibility determination, a fact finder's decision to credit the testimony of one or two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Fontenette v. McDermott, Inc., 95 0190 (La.App. 1st Cir. 10/6/95) 694 So.2d 266 (La.App. 1st Cir.1995).
La. R.S. 23:1208 provides for penalties for willfully making a false statement or representation in connection with a workers' compensation claim and provides for the forfeiture of workers' compensation benefits. The statute provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation....
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter....
This statute encompasses any false statements or representations, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of the employee's accident or claim. Resweber v. Haroil Construction Company, 660 So.2d 7 (La. 1995); LeBlanc v. Grand Isle Shipyard, 95 2452 (La.App. 1st Cir. 6/28/96), 676 So.2d 1157.
This statute requires (1) false statements concerning a prior injury (2) made willfully and deliberately and (3) made for the purpose of obtaining workers' compensation benefits. This broadly worded statute encompasses such statements made to anyone, including the employer, physicians or insurer. Resweber v. Haroil Construction Company, supra. All three requirements must be met before a claimant can be penalized. Carver v. U.S. Copy, Inc., 96-611 (La. App. 5th Cir. 3/25/97), 694 So.2d 423, writ denied 97-1507 (La.9/26/97), 701 So.2d 986.
The court in Resweber stated that, in enacting and amending La. R.S. 23:1208, the legislature has made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over the years to make La. R.S. 23:1208 easier to enforce and to make its penalties stronger. Resweber v. Haroil Construction Company, supra. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits and this legislative intent cannot be ignored. Resweber v. Haroil Construction Company, supra.
*147 The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in the forfeiture of benefits. Resweber v. Haroil Construction Company, supra.

Discussion
The plaintiff's deposition was taken on May 30, 1996. The attorney for Allen Canning specifically instructed the plaintiff to ask for clarification if questions were not clear to her. When questioned about her medical history, she claimed that she had suffered from migraines for "a while" and first started having these headaches when she began having children.
Regarding her injuries in this alleged accident, the plaintiff stated that she had pain in her lower back from the center on down her right leg and in her shoulders. She also claimed her migraine headaches increased in number and severity. She claimed that prior to October 11, 1995, she had never injured her low back, had never complained of pain in the lower back, nor had she complained of symptoms of pain and numbness in her right leg. She also denied having shoulder pain before October 11, 1995. She claimed that she last had a migraine headache about one year prior to her alleged injury.
The plaintiff was specifically asked if she could ever remember having her neck or back x-rayed before October 1995. She responded negatively. She was specifically asked if she ever had a car wreck. She said, "No." She was asked if she had ever been hospitalized at E.A. Conway Medical Center and she said, "No." She denied ever having been hospitalized even for tests and she stated that she had been to the hospital just for medication. The plaintiff was asked, "Have you ever been hospitalized in your life other than for the birth of your kids?" She responded, "No."
The plaintiff was quizzed as to whether she had seen any other physician as a result of her alleged accident and she responded negatively. Upon further questioning the plaintiff stated that she had seen her family physician, Dr. Olie Garrison, for treatment of a bladder problem, unrelated to her alleged injury.
Following plaintiff's deposition, Allen Canning obtained the plaintiff's medical records which demonstrated that the plaintiff's testimony in her deposition was filled with falsity. The records revealed that the plaintiff was seriously injured in an automobile accident in 1977 in which several vertebrae in her neck were fractured. She suffered fractures of the cervical spine at C-2, C-3, and C-4 with a minimal amount of subluxation. The plaintiff was hospitalized at E.A. Conway Medical Center on March 5, 1977 and remained hospitalized for approximately 22 days. During that time, portions of the plaintiff's head were shaved and holes were drilled into the outer cortex of her cranium for the installation of a Crutchfield tong, in order to apply cervical traction.
The record shows that following this significant injury in the auto accident, the plaintiff frequently and consistently complained of neck and back pain and migraine headaches. She also had numerous x-rays of her neck and back. The plaintiff often went to E.A. Conway Medical Center for treatment of these symptoms. On April 23, 1990, the plaintiff went to the hospital complaining of neck pain and weakness and recurrent numbness of the toe as well as numbness from the foot to the mid thigh. On November 27, 1990, the plaintiff complained of right side pain in her head. On September 27, 1991, she went to the hospital complaining of dizziness and weakness of three weeks duration. On October 2, 1991, the plaintiff complained of dizziness with right side head and neck pain. On April 16, 1993, the plaintiff went to the hospital with neck and shoulder pain of three weeks duration with pain radiating down the back. On April 28, 1993, the plaintiff was seen in the orthopedic clinic at E.A. Conway Medical Center for neck pain which said she had since her auto accident. On June 19, 1993, the plaintiff went to the hospital with a headache, dizziness, weakness and vomiting. On June 29, 1993, the plaintiff complained of throbbing pain on the right side of her head. On November 26, 1994, the plaintiff complained of "knots" in her scalp *148 and on both sides of her neck. On July 12, 1995, the plaintiff went to the hospital complaining of a headache and pain in the cervical area and right shoulder. On September 28, 1995, the plaintiff reported to the hospital for a follow up visit from a previous visit for chest pains. The record noted that the plaintiff's headaches were unchanged at that time.
The plaintiff also indicated in her deposition that Dr. Olie Garrison was her family physician and he had treated her for a bladder problem unrelated to her alleged injury at Allen Canning. Dr. Garrison's records show that the plaintiff was not truthful when she stated that she had never complained of back pain prior to her alleged injury at the defendant's company. On August 31, 1993, Dr. Garrison saw the plaintiff with complaints of lower back pain which she had for three months and which worsened when she sat for a long time.
On September 20, 1993, the plaintiff presented to Dr. Garrison with numbness in her right big toe. The notes indicate that the plaintiff had somatic dysfunction of the lumbar spine.
An entry on October 4, 1993, in which the plaintiff complained of symptoms of allergies, notes that the plaintiff's back pain is better. On October 25, 1993, the plaintiff saw Dr. Garrison for numerous complaints, including back pain.
On December 14, 1993, the plaintiff was treated for a migraine headache and in January 1994, she saw Dr. Garrison, complaining of aching from the center of the back down her legs which had been going on for four days. On January 25, 1994, the plaintiff again saw Dr. Garrison, complaining of back and shoulder pain. These records show that the plaintiff repeatedly made untrue statements in her deposition testimony in an apparent attempt to conceal her longstanding complaints of headaches as well as neck, shoulder and back pain.
In contrast to her deposition testimony, at the hearing, on direct examination, the plaintiff stated that she had been injured in an automobile accident in 1977 and has had neck and shoulder pain on occasion since that time. She also stated that Dr. Garrison had treated her for pain in her legs, neck and shoulders. On cross-examination, the plaintiff was confronted with her deposition testimony that she had never been hospitalized other than for child birth, had never had a car wreck, never had an x-ray of her neck or back, never had trouble with her back or legs, never had low back pain or shoulder pain before October 11, 1995, never had any pain or numbness in her right leg prior to October 11, 1995, and only had neck pain with migraines before October 11, 1995. When asked why she did not disclose her prior medical history and her broken neck, the plaintiff replied, "When you asked me those questions, I did not understand those questions that you were asking me. It was just when you asked me about an injury or childhood, I didn't remember a childhood injury. That's why I answered no."
The defendant's attorney then pointed out that the deposition question never asked about childhood injuries. Counsel went through the numerous questions asked at the deposition about pain and symptoms, rather than injuries, and then asked, "Why did you not take the opportunity to tell me when under oath of all your prior pain and symptoms of low back pain that you've complained to doctors about?"
The plaintiff responded. "Like I said, I misunderstood a lot of those questions. I was only thinking of an injury. That's what my mind was focusing on, an injury."
When asked why she said at her deposition that it had been a year prior to October 11, 1995 since she had a migraine headache, when the records showed that two weeks before this incident her medical records show that her headaches are unchanged, the plaintiff replied, "Because I didn't remember any of those things, and like I say, I was under a lot of stress. My mind was not focusing."
When asked why she said that she had never had a back or neck x-ray in her life before October 11, 1995, the plaintiff said, "I wasn't thinking."
The record in this case shows that the plaintiff willfully and deliberately made false statements about her medical history. The transcript shows that the questions posed *149 were straightforward and not subject to any misinterpretation by the plaintiff, who is a high school graduate. We do not see how the plaintiff could have misunderstood simple questions such as: "Have you ever had an x-ray of your neck or back?"; "Have you ever been hospitalized other than for the birth of your kids?"; and "Have you ever been in a car wreck?" When confronted with the falsities, the plaintiff did not offer a satisfactory explanation, instead saying, "I wasn't thinking" or "My mind wasn't focusing." When asked whether she had seen her family physician, the plaintiff stated that she had consulted Dr. Garrison for a bladder problem, admittedly unrelated to her alleged accident at work. However, the plaintiff conveniently omitted the numerous times she consulted him for migraines, as well as neck, back and shoulder pain. Also, it is not reasonable to believe that the plaintiff simply forgot about her serious auto accident in 1977. We note that on several occasions when plaintiff went to E.A. Conway Medical Center with her numerous ailments, the auto accident is included in her medical history.
Further, the false statements and representations made by the plaintiff were not inadvertent or inconsequential, but instead dealt directly with the exact physical complaints she sought to attribute to her alleged injury at Allen Canning. Dr. Luttig consistently adjusted the plaintiff's spine at C-2, C-5, T-4, and L-3 and L-5. He also found indentations in the vertebrae attributable to trauma, but could not say when the trauma occurred. Dr. Luttig opined that the plaintiff's headaches were stemming from problems at the C-2 level. This is exactly the location of one of the vertebra fractured in the auto accident.
Also, not only did the plaintiff make false statements and representations in her deposition, she also did so in failing to inform Dr. Luttig of her medical history. Dr. Luttig based his opinion that the plaintiff was injured in a work-related accident upon the false assumption that the plaintiff was symptom free before the alleged date of her injury on October 11, 1995. In his testimony he stated that the plaintiff's headaches must have been caused by the work related injury she complained of because she did not have migraines before the date of the alleged accident.
Given the extent of the plaintiff's false statements and the fact that they bore directly on the issue of whether she sustained a work related injury, we can reach no other conclusion than that the plaintiff's misstatements were made in order to obtain workers' compensation benefits. No other reasonable motivation appears in this record for the extensive deception perpetrated by this plaintiff in this case. Because we find that the three requirements of La. R.S. 23:1208 are satisfied here, the plaintiff must forfeit any claim she might have for workers' compensation benefits.
Further, we find that the trial court erred in excusing the plaintiff's false statements. The hearing officer excused the inconsistencies by saying that the plaintiff misunderstood the questions asked at the deposition and at trial. As demonstrated above, the record simply provides no factual support for this conclusion.
The hearing officer also erroneously found that "the defendants failed to present one shred of evidence to rebut Dr. Luttig's findings of causation and resulting disability." On the contrary, as stated above, because the plaintiff did not tell Dr. Luttig about her medical history, his conclusions were inaccurate and his opinion connecting the plaintiff's symptoms with a fall at Allen Canning is tainted. Therefore, Dr. Luttig's testimony does not establish causation and disability in this case.
The hearing officer also erroneously found that the plaintiff had a preexisting condition which did not manifest itself until after her alleged injury on October 11, 1995. The record in this case clearly shows that the plaintiff continuously manifested symptoms of migraine headaches, neck, shoulder and back pain from the time of her auto accident in 1977.
Based upon these facts, we find that the plaintiff violated the provisions of La. R.S. 23:1208 and must forfeit all claim she has to workers' compensation benefits.

*150 CONCLUSION
For the reasons stated above, we reverse and vacate the decision of the workers' compensation hearing officer awarding workers' compensation benefits, medical benefits, pharmacy benefits, mileage, penalties and attorney fees to the plaintiff, Geraldine Bass. The plaintiff has forfeited any claim she may have to benefits under La. R.S. 23:1208 due to her willful false statements and representations made for the purpose of obtaining workers' compensation benefits. Judgment is hereby rendered in favor of the defendant, Allen Canning Company, dismissing with prejudice the plaintiff's claims at her cost.
REVERSED.
NOTES
[1] According to the defendant, the company is incorrectly referred to as Allen Cannery Company in the suit name and pleadings.