759 So.2d 1044 (2000)
HECKEL LOGGING, INC., Plaintiff-Appellee,
v.
Michael W. PRUITT, Defendant-Appellant.
No. 33,314-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1045 Michael W. Pruitt, In Proper Person.
Lee & Broussard by Francis Broussard, Monroe, Counsel for Appellant.
Egan, Johnson & Stiltner by Thomas D. Travis, Baton Rouge, Counsel for Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
GASKINS, J.
The sole issue in this appeal is whether the workers' compensation judge (WCJ) correctly ruled that the claimant, Michael W. Pruitt, forfeited his right to weekly workers' compensation benefits by fraudulently claiming reimbursement for mileage. For the reasons set forth below, the judgment is affirmed.

FACTS
At a pre-trial conference in this matter, the parties stipulated to Mr. Pruitt's employment with Heckel Logging, Inc.; to an accident within the course and scope of his employment; and to a compensation rate of $220 per week. The only issue tried was whether Mr. Pruitt forfeited his right to weekly compensation benefits by fraudulently seeking reimbursement for claimed mileage.
The evidence at trial revealed that Mr. Pruitt submitted false claims for reimbursement for taxi fare while in Alexandria, Louisiana, for a water certification class. The class was paid for by the Louisiana Workers' Compensation Corporation (LWCC), his employer's insurer, as part of his vocational rehabilitation. Although he took only one cab ride, catching a ride in class members' cars on the other trips, he submitted eight falsified receipts for cab fares, each for $27.00.[1] Mr. Pruitt testified that he got members of his class to sign the receipts and justified this action by claiming that he had been overcharged by the taxi driver and that he was trying to get some of his money back. The evidence also showed that he submitted an excessive claim for mileage from his home in Simsboro to a doctor's office in Monroe. Although the actual round-trip distance from his home to the doctor's office and back home again was about 90 miles, he made eight claims for a round-trip distance of 180 miles. Mr. Pruitt's explanation was that he had confused the mileage to Monroe with the mileage to medical appointments in Shreveport, Louisiana.
Annette Robinson, the LWCC claims adjustor, testified about Mr. Pruitt's claims for reimbursement for mileage. As to Mr. Pruitt's trip to Alexandria, she disclosed that she had instructed him to save his receipts and that she had informed him that she was going to check on the cost. She testified that Mr. Pruitt had been *1046 warned prior to the Alexandria incident because of "another incident that occurred about misrepresentations." After she investigated the cab receipts and learned from the cab company that they were false, she confronted Mr. Pruitt; he admitted filling out the receipts himself. She also confronted him about the excessive mileage claim for his doctor's appointments. He called her back the next day and said he had made a mistake.
At the conclusion of the trial, the WCJ stated that based upon the evidence reviewed, "clearly this case involves fraud." However, the WCJ was concerned about a diagnosis by Dr. David Thomason, a psychologist, indicating that Mr. Pruitt had a personality disorder. Given the fact that Mr. Pruitt had submitted a fraudulent claim for expenses incurred in Alexandria despite being told by Ms. Robinson that he was being watched, the WCJ had the impression that the fraudulent acts might be the result of a mental disorder. Therefore, the WCJ gave additional time for the taking of the psychologist's deposition to find out whether, in his opinion, the fraudulent acts of Mr. Pruitt resulted from the mental disorder. The case was continued in order to allow time for the deposition.
When the proceedings resumed following the taking of the psychologist's deposition, that deposition was introduced into evidence, and the WCJ heard argument from the attorneys. The WCJ then took a brief recess to review the deposition and to review cases cited by Mr. Pruitt's attorney. When the WCJ returned from the recess, she stated that she had reviewed the deposition of Dr. Thomason, who did not find Mr. Pruitt's diagnosis to be a mitigating factor as to his decision-making on whether to be fraudulent or deceptive. Accordingly, the WCJ found that Mr. Pruitt's actions, when he forged taxi cab receipts, were willful misrepresentations made for the purpose of receiving worker's compensation benefits to which he was not entitled. Because the WCJ found that Mr. Pruitt committed fraud, the WCJ ordered his workers' compensation benefits forfeited.

DISCUSSION
A WCJ's findings of fact in a workers' compensation proceeding may not be set aside in the absence of manifest error or unless they are clearly wrong. Tatum v. St. Patrick's Psychiatric Hospital, 32,616 (La.App.2d Cir.12/30/99), 748 So.2d 1276, writ denied, 2000-288 (La.3/24/00), 758 So.2d 157. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
It is unlawful for a person to willfully make a false statement or representation for the purpose of obtaining or defeating any workers' compensation benefit or payment. La. R.S. 23:1208(A). Any employee who makes such a willful false statement shall, upon determination by the WCJ, forfeit any right to workers' compensation benefits. La. R.S. 23:1208(E).
Mileage reimbursements are "payments" which can trigger the workers' compensation forfeiture statute. Johnson v. Basic Industries, Inc., 97-1136 (La.App. 3d Cir.4/15/98), 711 So.2d 843, writ denied, 98-1358 (La.6/26/98), 719 So.2d 1292.
Mr. Pruitt argues that falsification of mileage reimbursement claims should not be a basis for terminating his workers' compensation benefits, citing Chenault v. Storehouse Furniture, 97-1242 (La.App. 4th Cir. 1/28/98), 706 So.2d 1060, writ denied, 98-0364 (La.3/27/98), 716 So.2d 889. However, in the Johnson case, the Third Circuit agreed that the employer in Chenault failed to prove a willful misrepresentation; however, it disagreed with the dicta in Chenault which suggested that a claimant who willfully inflated his mileage expenses should not be disqualified from receiving disability benefits. We agree *1047 with the Third Circuit's decision in Johnson, supra, and find that such a willful misrepresentation subjects the claimant to disqualification under La. R.S. 23:1208.[2]
In this case, the plaintiff willfully falsified eight taxi receipts, as well as doubling his mileage on another occasion. On the forged taxi receipts alone, the amount falsified totaled $216. Certainly, these willful, false representations were made intentionally to obtain a workers' compensation payment to which he was not entitled. They cannot be excused as inadvertent and inconsequential. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7; Bass v. Allen Cannery Company, Inc., 30,635 (La. App.2d Cir.6/26/98), 715 So.2d 142, writ denied, 98-2069 (La.11/6/98), 728 So.2d 395. The WCJ's findings that these representations were fraudulent is not manifestly erroneous and should be upheld. Accordingly, we affirm the judgment at appellant's cost.
AFFIRMED.
NOTES
[1] Investigation revealed that a cab fare for the distance claimed would have cost only about $7.00.
[2] By analogy, we also note that the criminal provisions of La. R.S. 23:1208(C) specifically define "benefits claimed or payments obtained" as including the cost or value of transportation expense.